## F. W. NIEBLING COMPANY v. JAMES COAL & ICE COMPANY.

### No. 2522.   Decided December 23, 1913 (137 Pac. 834).

1. SALES—ACTION FOR PRICE—ACCEPTANCE OF CONTRACT—SUFFICIENCY OF EVIDENCE. Evidence, in an action for the price of machinery and supplies for an ice plant, wherein the defense was that there was no contract since plaintiff's acceptance of the proposal in its final form had never been communicated to defendant, *held* to sustain a finding that defendant had knowledge of plaintiff's acceptance.   (Page 51.)

2. SALES—ACTION FOR PRICE—INSTRUCTIONS—ACCEPTANCE OF CONTRACT. Where, in an action for the price of machinery and supplies for an ice plant, there was evidence sufficient to justify a finding that defendant had knowledge of plaintiff's acceptance of the contract sued on, it was not error to instruct that notice of acceptance need not have been formally given, but that it would be sufficient if defendant had actual notice or knowledge thereof prior to the cancellation or withdrawal of the proposal made by him to plaintiff.   (Page 56.)

3. APPEAL AND ERROR—HARMLESS ERROR—OBJECTION TO DEPOSITIONS. Error, if any, in a ruling that plaintiff could put in evidence a portion of a deposition without introduction of the remainder was harmless where the whole deposition was read in evidence.   (Page 59.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by the F. W. Niebling Company, a corporation, against the James Coal & Ice Company, a corporation.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Joseph Chez* and *Halverson & Pratt* for appellant.

*John E. Bagley* for respondent.

STRAUP.

The plaintiff is an Ohio corporation doing business in Cincinnati; the defendant a Utah corporation doing business in Ogden. The plaintiff sued the defendant on an alleged breach of contract. The trial before the court and jury resulted in a judgment in favor of the plaintiff. The defendant appeals.

The plaintiff was engaged in manufacturing and furnishing machinery and supplies for ice plants, and in installing them. It had a soliciting agent at Ogden. He also supervised the installation of machinery, or assisted in that work. Upon negotiations between him and the defendant, he submitted to it mostly a printed and partially typewritten proposal called "Specifications and Proposal Made" and "Memoranda of Agreement Submitted" by the plaintiff with respect to machinery and supplies to be manufactured, furnished, and installed by the plaintiff for the defendant in the construction of an ice plant for it at Ogden. The instrument is lengthy, covering twenty-six printed pages of the abstract. It is dated October 29, 1910. It in detail specifies and describes the machinery and supplies to be manufactured and furnished by the plaintiff and the plant to be erected by it. It provides that the purchaser, the defendant, was "to furnish all buildings, complete foundations, masonry, and carpentry work," etc., and to have

the premises and work ready for the erection of the machinery by April 1, 1911; the plaintiff to ship the machinery and supplies 120 days, and to install them 165 days, after "acceptance of contract." The price was $28,850, payable in installments. It prescribes and defines many other covenants and obligations of the respective parties. The contract, as put in evidence, required the defendant to pay the freight from Cincinnati to Ogden, and shipments to be made thirty days earlier than heretofore stated upon thirty days' written notice by the defendant prior to shipments of the readiness of the building, etc. It further provides that "this proposal shall become a contract when accepted by purchaser (the defendant), and approved in writing by the" plaintiff at its home office in Cincinnati. It was accepted by the defendant in writing November 15th, and in writing approved by the plaintiff December 1st. The instrument thus, on its face, is a completed contract, signed and executed by both parties. But it was shown by evidence that the proposal or memoranda of agreement, when first submitted to and accepted and signed by the defendant, did not contain the provisions requiring the defendant to pay the freight, and shipments to be made thirty days earlier and that the proposed agreement, so accepted by the defendant without these provisions, was delivered to the plaintiff's agent at Ogden, who forwarded it to the plaintiff at Cincinnati for approval. It was approved by it in every particular on December 1st; but it added the provision requiring the defendant to pay the freight, and then returned the proposed agreement to its agent at Ogden for submission to the defendant. It was submitted to it on December 5th. The defendant, on the 8th, approved that provision, and again accepted the agreement, but inserted the provision requiring shipments to be made thirty days earlier, and again delivered the agreement so approved and signed by it to plaintiff's agent and retained a duplicate. The agent at once forwarded the original to the plaintiff, who approved and accepted the agreement with the provision inserted by the defendant. But it was shown

that the plaintiff did not, by writing or otherwise, directly notify the defendant that it had approved and accepted such provision inserted by the defendant.

It, however, was shown by testimony on behalf of the plaintiff that it, on the last receipt of the agreement, at once proceeded to manufacture machinery and supplies called for by the agreement, and sent to the defendant maps and plans of the dimensions and kind of building and structures to be constructed by it under the contract; that blueprints of the floor plan, base, and foundation of the plant were sent to and received by the defendant on the 14th and 17th of December, and other maps and plans at different times between the 23d and 30th of December; and that, in pursuance of them and the agreement, the defendant "broke ground," and "laid off the foundation" for the erection of the necessary buildings and structures so to be constructed and prepared by it under the agreement. It was shown several conferences and consultations with respect to that were had between the defendant and the plaintiff's agent, and some work done by it. Machinery and supplies, with the defendant's knowledge, were ordered by the plaintiff's agent; some of it ordered at the defendant's request. That was also partly shown by the testimony of one of the defendant's officers in charge of the work in its behalf. As testified to by him, controversies arose between him and the plaintiff's agent as to the things to be done and furnished by the plaintiff under the agreement. He testified that he and the plaintiff's agent "had a disagreement right on the ground about the pump. I said to him, 'Where does the well go on this foundation plan for the pump?' He said, 'There ain't no pump.' I said, 'What! No pump in the contract?' He said, 'No; there is no pump.' I said, 'I know darned well there is a pump. How are you going to get water without a pump?' He said, 'There ain't no pump in the contract, and I'll just dig down in my pocket and furnish a pump.' That didn't sound good to me, and we (he and his associates) went and examined the specifications,

and we saw they had been changed, and that a concrete ice tank had been substituted for a steel plate tank."

He further testified that he and his associates the next day went to their lawyer and "framed" a telegram and letter canceling the contract or agreement, which, in the telegram and letter, was called "order," and on the 24th of December sent and mailed them to the plaintiff at Cincinnati. The telegram is: "Radical changes have been made in our order by your agent Keener without our knowledge and consent and we hereby cancel the same. Letter follows." The letter is:

"You are hereby notified to cancel our order dated October 29 and November 15, 1910, for a thirty-ton plate ice plant that was to be installed for the undersigned, and we hereby countermand the same. We are not satisfied with the order and the supplemental interpretations made of it by your agent, Mr. Keener. The express understanding was that the ice plant was to be erected by your engineer, Mr. Keener, and that the prices specified were to be f. o. b. Ogden, and not at your factory, as present order seems to provide. It was clearly understood between all parties that the machinery was to come from your factory direct, and not to be supplied and shipped from various places in the West. It seems that your agent, Mr. Keener, failed to include all the articles and pieces of machinery necessary to complete the ice plant, and now he is expecting us to supply said pieces of machinery and articles that he omitted to include, and which are a part of said plant, at an additional expense to us outside of the contract price. For instance, how could we expect to install and operate an ice plant without a pump? yet we are now told that the contract does not include a pump. We are also informed that your agent, Mr. Keener, expects to be compensated from us while installing the ice plant, while we were expressly made to believe that this was fully covered by the contract, and included in the order price. The alterations and omissions are certainly not satisfactory to us, hence we hereby notify you that, under the terms and provisions of the order giving

us the privilege to countermand and cancel the same before January 1, 1911, we hereby cancel the order, and countermand the same, and you will govern yourself accordingly."

It was also shown that between the 15th and 25th of December representatives of competitors of the plaintiff appeared at Ogden and entered into negotiations with the defendant to build an ice plant for it at Ogden. As a result of such negotiations a contract to construct a plant for the defendant was entered into between the 25th of December and January 1st between the defendant and one of such competitors, who put up a plant at Ogden for the defendant, the foundation work of which was begun about the 1st of January.

The defense is this: (1) That there was no contract; and (2), if so, the terms of it were not as shown by the instrument put in evidence by the plaintiff. The first is based on the claim that, to constitute a meeting of the minds, notice of acceptance by the plaintiff of the provision requiring shipments to be made thirty days earlier, and which was inserted in the agreement by the defendant on the 8th of December, and after the plaintiff had accepted, approved, and signed the contract, was essential, and that no such notice was given. The second is based on the claim that the contract, when finally approved and accepted on the 8th, the original delivered to the plaintiff's agent, and by him forwarded to the plaintiff, and a duplicate retained by the defendant, contained provisions reserving to the defendant the right, with or without cause, to annul and cancel the contract at any time before January 1st, and requiring the plaintiff to furnish a steel plate ice tank instead of a concrete tank. Neither the original contract nor the duplicate as produced by the parties contained such provisions. The defendant, however, as to that charged that the plaintiff's agent, after the delivery of the contract, surreptitiously obtained possession of the duplicate retained by the defendant, and abstracted therefrom two typewritten pages containing such provisions, and inserted in place of them two other pages not containing such provisions, and likewise, by some

means not very clearly outlined, made such substitution in the original sent to the plaintiff. The defendant gave some evidence which, in a way, may be said tended to support the charge; plaintiff, much against it.

The court took the defendant's view that notice to the defendant of plaintiff's acceptance of the provision requiring shipments to be made thirty days earlier was essential to constitute a binding contract, and submitted the case to the jury on that theory. The defendant, however, contends that there is no evidence of such an acceptance, and for that reason the case ought to have been withheld from the jury. This is based on the contention that, to constitute such notice, it was essential that the plaintiff should have given it by some communication, either oral or in writing, in terms stating an acceptance, which was not done.

And in this connection complaint is also made of the charge on that subject. The court, after charging that notice of such acceptance was essential, and to return a verdict for the defendant, if the jury found no such notice was given, further charged that, to constitute such notice, "it was not necessary" that it should have been given "formally and in express words," or "that the plaintiff should have used express language, and caused the same to be conveyed to the defendant of such acceptance. It would be sufficient if you find by a preponderance of the evidence that the defendant had notice or knowledge prior to the cancellation or withdrawal of the proposal that the said plaintiff was proceeding to carry out the terms of said contract." We think no error was committed in these particulars.

After the contract with the proviso inserted by the defendant was received and approved by the plaintiff, the defendant, before its attempted cancellation, received maps and plans for the buildings and structures to be built by it, and in which the machinery to be manufactured by the plaintiff was to be installed; staked and laid off the ground for the foundation, and had different consultations with plaintiff's agent as to the structures to be erected by the de-

fendant in accordance with such maps and plans; itself requested orders and had knowledge that plaintiff's agent was giving orders for machinery and supplies to be installed; had controversies and disagreements with the plaintiff's agent as to the things to be furnished and done by the plaintiff under the contract; and, in its letter canceling the "order" or contract, proceeded on the theory that there was a contract, and attempted to repudiate it upon the grounds that "we are not satisfied with the order and the supplementary interpretations made of it by" plaintiffs agent, that shipments of machinery were to be made directly from plaintiff's factory, and not from "various places in the West," that the necessary articles and pieces of machinery were not included, that plaintiffs agent "expects to be compensated from us while installing the ice plant, while we were expressly made to believe that this was fully covered by the contract, and included in the order price," and that "the alterations and omissions are certainly not satisfactory to us, hence we hereby notify you that, under the terms and provisions of the order giving us the privilege to countermand and cancel the same before January 1, 1911, we hereby cancel the order, and countermand the same," etc. All this justifies a finding that the defendant had knowledge of plaintiffs acceptance and approval of the contract as finally signed and delivered by the defendant, and that, not only the plaintiff, but the defendant as well, treated it as fully accepted and completed. If it in fact was not an existing and a completed contract, and was only what the defendant now regards it, a mere unaccepted proposal or offer, then did the defendant, in its letter, employ much useless and meaningless language to indicate a withdrawal of a mere unaccepted proposal or offer. The import of the letter shows it to be not such a mere withdrawal, but a repudiation of or withdrawal from an existing agreement on the grounds of mistake, noncompliance, alterations, and omissions, and especially on the ground that the agreement or the so-called order in express terms gave the defendant the right to withdraw from or abandon the contract or order

at any time prior to January 1, 1911. And on that ground did the defendant, as stated in its letter, "countermand and cancel the same," and on the further ground, as testified to by its principal witness, its president, that "the cancellation was on account of the contract being changed by the purchaser (the defendant) furnishing the tank when we knew the company (the plaintiff) was to furnish it." When the defendant entered or was about to enter into a contract with the plaintiff's competitor, it did not even then claim or pretend that its dealings with the plaintiff constituted a mere unaccepted offer or proposal, but regarded them as consummated into an existing agreement, and sought to abandon or withdraw from it on the grounds of noncompliance, alterations, and mistake, and of the reservation contained in it giving the defendant the option, with or without cause, to countermand and abandon it at any time prior to January 1st. So, on the defendant's theory adopted by the court that notice to the defendant of plaintiff's acceptance of the clause inserted by the defendant, requiring shipments to be made thirty days earlier, etc., was essential to complete the contract, and to render it binding, we think there is ample evidence to justify a finding of the defendant's knowledge of such acceptance, and that, in view of the evidence, the instruction as to what constituted sufficient notice or knowledge was not erroneous. Whether the agreement, when accepted and signed by the defendant, contained the provision giving it the option to countermand or withdraw from it at any time before January 1st was a disputed matter; the defendant contending that it did, the plaintiff that it did not. As to that the court instructed the jury to return a verdict for the defendant, regardless of all other questions, if they found that the proposed agreement or order, when accepted and signed by the defendant, contained such a provision. So the defendant had the full benefit of a submission of the case as to that issue.

Complaints also are made of the charge, and of some evidence received concerning the measure of damages. We do

not think any error is shown as to that; at least not of such character as to require a reversal of the judgment.

Further complaint is made of a ruling relating to a deposition of one of plaintiff's witnesses. The plaintiff put in evidence only a portion of the direct examination as contained in the deposition. The defendant objected 3 to that, urging that the plaintiff should read in evidence the whole deposition, both direct and cross-examination, and moved to strike the testimony read of the direct examination. The court overruled these objections, and remarked that the defendant could offer the portions not offered by plaintiff. Altercations followed as to what was read and what not, and finally by consent of counsel the whole of the deposition was read. That ought to end that. Why further trouble us with it?

We think the judgment should be affirmed, with costs. Such is the order.

McCARTY, C. J., and FRICK, J., concur.